**EFiled: Sep 25 2015 11:27AM EDT**
**Transaction ID 57921407**
**Case No. 10164-VCN**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

September 25, 2015

Gregory V. Varallo, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

Kenneth J. Nachbar, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE  19801

> Re:  *TCV VI, L.P. v. TradingScreen Inc.*
> C.A. No. 10164-VCN
> Date Submitted:  September 3, 2015

Dear Counsel:

This discovery dispute arises from a company's partial refusal to buy back preferred stock under a mandatory redemption provision in its charter.  The company hopes to show that its (and its directors') conduct was in good faith.  Part of that will involve reliance on the advice of its attorneys.  Thus, waiver of the attorney-client privilege—to some disputed extent—became necessary as a tactical matter.  At issue, as framed by Plaintiffs' motion to compel, are the scope of the company's waiver and whether the company is obligated to prepare a log

identifying and supporting its partial redaction of some 1,900 documents on grounds of attorney-client privilege.

## I. FACTUAL BACKGROUND[1]

Defendant TradingScreen Inc. ("TradingScreen") is contractually obligated to redeem its preferred shares held by Plaintiffs TCV VI, L.P. and TCV Member Fund, L.P. ("Plaintiffs"). It has invoked 8 *Del. C.* § 154 to avoid paying and asserts that full payment would threaten its ability to continue as a going concern. TradingScreen will seek to show at trial that its Special Committee's decision not to pay the full, and otherwise due, redemption amount was made in good faith.[2] One component of its proof of good faith will be the Special Committee's reliance upon legal advice. A consequence of that strategy is that TradingScreen must give up its attorney-client privilege as to the subject matter of the advice upon which it will rely. Yet, it does not depend upon all of the advice that it has received and,

---

[1] The factual background is developed in greater detail in *TCV VI, L.P. v. TradingScreen Inc.*, 2015 WL 1598045, at *1 (Del. Ch. Feb. 26, 2015), where the Court denied Plaintiffs' motion for judgment on the pleadings.

[2] TradingScreen's board established a Special Committee to assess its duties regarding the redemption. Its members, Philippe Buhannic, Piero Grandi, and Pierre Schroeder are also Defendants. From time to time, for convenience, reference to TradingScreen includes all Defendants.

therefore, has no purpose for relinquishing that important privilege beyond the scope of the advice that it has put at issue.

That brings us, perhaps inevitably, to the current discovery dispute that focuses upon the scope of TradingScreen's waiver of the attorney-client privilege. The parties debate not only the subject matter of the waiver, but also the range of the waiver because TradingScreen's lawyers advised not only the Special Committee, but also TradingScreen's management, financial advisors, and other board members regarding the same general subject matter. Further, a slippery slope dynamic that inheres in many waiver disputes seems to have driven the parties to the present conflict: After Defendants decided to disclose four legal memoranda that, in their view, defined the scope of waiver as only including topic "X," they disclosed additional documents containing waived subject matter that, in Plaintiffs' view, addressed topics "X" and "Y" and thereby extended waiver to all documents concerning subject "Y."

Finally, Plaintiffs challenge TradingScreen's redaction of approximately 1,900 documents. Those redactions, largely, if not exclusively, made on privilege grounds, have not been logged. The parties seem to agree that something should

be done about figuring out the general nature of the legal advice which has been redacted. From that limited consensus, they diverge widely. TradingScreen argues that Plaintiffs can ascertain the redacted topics from context and, if there are questions about a small subset of the documents, perhaps 200 in number, they can be logged. According to TradingScreen, logging all 1,900 redacted documents would be inefficient, burdensome, and not particularly helpful. Plaintiffs have offered the Court a number of alternatives ranging from: (1) TradingScreen's failure to prepare a redaction log supports a general relinquishment of its claim of privilege; (2) TradingScreen's senior Delaware counsel should review the redactions and certify that they do not protect otherwise privileged subject matter for which the Court has concluded that the privilege has been waived; (3) referral of the redacted documents to a discovery master; to (4) a modified quick-peek arrangement.

The words describing the scope of the subject matter waiver have evolved during these proceedings. Further, after the Plaintiffs' briefs identified some fifty-nine documents that in Plaintiffs' view contained waived content, Defendants made additional disclosures. Although the scope may have drifted, it has not

moved all that far. Defining the scope of the waiver is not merely difficult; it is important. Language that fairly encompasses the waiver is not easy to come by. Moreover, the scope of that waiver will limit what TradingScreen can argue at trial with respect to legal advice, but Plaintiffs must also be concerned that the scope of advice considered at trial does not expand into topics as to which they have not had a fair opportunity to inquire.

## II. ANALYSIS

Plaintiffs' motion presents two principal questions. First, what is the scope of Defendants' waiver? In other words, what sorts of documents did Defendants— purposefully or otherwise—render discoverable by producing documents containing legal advice? Second, what must Defendants do to preserve the privilege for the unlogged redactions that appear in roughly 1,900 documents?

A. *What is the scope of Defendants' waiver?*

1. Applicable Legal Standards

The attorney-client privilege, as defined in Delaware Rule of Evidence 502, shelters certain communications from discovery on the rationale of "encourag[ing]

full and frank communication between clients and their attorneys."[3]  A party can

waive this privilege voluntarily[4] or, in certain circumstances, implicitly.[5]

One way a party can implicitly waive the attorney-client privilege is through

the so-called "at issue" exception, which "exists where either (1) a party injects the

privileged communications themselves into the litigation, or (2) a party injects an

issue into the litigation, the truthful resolution of which requires an examination of

confidential communications."[6]  If either condition is met, the court has discretion

to order disclosure of additional documents in the interest of fairness,[7] even if

"contrary to the [waiving] party's actual intent."[8]  The animating purpose of this

fairness inquiry is preventing use of "the attorney-client privilege as both a 'shield'

---

[3] *In re Quest Software Inc. S'holders Litig.*, 2013 WL 3356034, at *2 (Del. Ch. July 3, 2013).

[4] *See* D.R.E. 510.

[5] *See id*; *Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 259 (1995).

[6] *Quest Software*, 2013 WL 3356034, at *2 (quoting *In re William Lyon Homes S'holder Litig.*, 2008 WL 3522437, at *3 (Del. Ch. Aug. 8, 2008) (internal quotation marks omitted)).

[7] *See id.* ("The [at issue] exception rests upon a fairness rationale" (internal quotation marks omitted)); *Tackett*, 653 A.2d at 259 ("In the context of the attorney-client privilege, waiver rests on a rationale of fairness").

[8] *Tackett*, 653 A.2d at 259 (citing 8 John H. Wigmore, *Evidence in Trials at Common Law* § 2327 (J. McNaughton rev. ed. 1961)); *see also infra* note 10.

from discovery and a 'sword' in litigation."[9]  Thus, the at issue exception reflects the principle that parties should not be able to use the attorney-client privilege to cherry-pick only the best morsels of evidence from a mixed batch concerning the same subject matter.[10]

This is not to say, however, that partial waiver is *per se* impermissible.  To the contrary—because the fairness standard is fluid and responsive to different contexts, this Court has been willing to expand and contract the scope of waiver as specific circumstances require.  For example, in *In re Kent County Adequate Public Facilities Ordinances Litigation*,[11] the Court held that the scope of waiver resulting from voluntary disclosure of communications with counsel was "not without limits" because extending that waiver "into a broad waiver as to all (or almost all) communications between the County and its attorney" was

---

[9] *Quest Software*, 2013 WL 3356034, at *2.

[10] *See Tackett*, 653 A.2d at 259 (citing *Hercules Inc v. Exxon Corp*., 434 F. Supp. 136, 156 (D. Del. 1977), for the proposition that waiver ought to permit "disclosure of otherwise privileged information by the client under circumstances where 'it would be unfair to deny the other party an opportunity to discover other relevant facts *with respect to that subject matter*'" (emphasis added)).

[11] 2008 WL 1851790 (Del. Ch. Apr. 18, 2008).

unjustified.[12]  There, a group of landowners and developers challenged land-use ordinances promulgated by Kent County on multiple grounds, one of which involved a claim that certain amendments to the ordinances were drafted by a quorum of county officials in violation of the Freedom of Information Act's public meeting requirement.[13]  To defend against this allegation, Kent County disclosed communications between the County and its counsel to clarify the "narrow question regarding the process by which the detailed amendments to the [ordinances] came into being."[14]  Applying the at issue waiver exception, the Court held that the County had only waived privilege "with respect to [its] communications regarding the drafting and preparation of the . . . amendments."[15]

Because the disclosed communications in *Kent County* included counsel's specific drafts of, and edits to, certain amendments,[16] the relevant "subject matter" for purposes of at issue doctrine could have been characterized more broadly. Nevertheless, the Court limited the scope of waiver to communications concerning

---

[12] *Id*. at *5 & n.25.
[13] *Id*. at *1, 4.
[14] *Id*. at *5 n.24.
[15] *Id*. at *5.
[16] *Id*. at *5 n.24.

"drafting and preparation," noting that "it would be unfair to [the County defendants] . . . [in] this particular instance" for the court to prescribe broader waiver.[17]

Similarly, in *In re Unitrin, Inc. Shareholders Litigation*, the Court balanced fairness concerns—including sword-and-shield issues and the risk "of discovery evolving into a fishing expedition or serving purposes ulterior to the litigation"—to define the scope of waiver.[18] The plaintiffs in *Unitrin* sued the target company's board for resisting a merger proposal on the grounds of bad faith and lack of due care.[19] The board, in turn, asserted a reliance-on-counsel defense and disclosed the minutes of a board meeting in which counsel opined that the merger posed "serious antitrust problems."[20] Challenging this partial disclosure as unfair, the plaintiffs demanded discovery on additional legal advice about "the board's fiduciary obligations" and "the actual advice given to the board by its counsel at the critical meetings when the board decided to resist . . . [the] merger proposal."[21]

---

[17] *Id*. at *5.
[18] 1994 WL 507859, at *2–3 (Del. Ch. Sept. 7, 1994).
[19] *Id*. at *1.
[20] *Id*.
[21] *Id*. at *2.

Upon weighing the fairness considerations noted above, the Court ordered the production only of antitrust-related communications sent from defendants to counsel and held that the scope of waiver included neither additional communications counsel sent to the board nor counsel's work notes. [22] This, the Court reasoned, enabled the plaintiffs to make "reasonable inquiry" into the merits of the reliance-on-counsel defense by allowing discovery on the issue of whether the board influenced the antitrust-related advice it received.[23]

2. Discussion

The parties do not dispute the applicability of the at issue waiver doctrine—Defendants voluntarily produced privileged communications containing legal advice and acknowledge that they plan to use a reliance-on-counsel defense to show the Special Committee acted in good faith.[24] This Court's task, then, is determining that waiver's scope.

---

[22] *Id*. at *2–3. This Court has, however, ordered the production of attorney work notes to the limited extent that those notes formed the basis for oral advice actually communicated to the client. *iBasis, Inc., Inc. v. KONINKLIJKE KPN, N.V.*, C.A. No. 4774-VCS, at 8-9 (Del. Ch. Oct. 5, 2009) (Strine, V.C.) (TRANSCRIPT).

[23] *Unitrin*, 1994 WL 507859, at *2–3.

[24] Defs.' Answering Br. in Opp'n to Pls.' Mot. to Compel ("Answering Br.") 28–29.

Plaintiffs' scope argument reduces to two principal claims—one concerning the subject matter of discoverable documents and the other concerning the documents' drafters and addressees. First, Plaintiffs argue that a plain reading of Defendants' voluntarily disclosed documents compels a finding that Defendants' waiver extends to documents whose content concerns "the totality of advice regarding the redemption."[25] Although Plaintiffs proffer a litany of more precise topics that this subject matter allegedly subsumes throughout their briefs,[26] this broad definition conveys a suitable approximation of their position on the matter.

Second, Plaintiffs assert that the scope of Defendants' waiver includes redemption-related legal advice sent not only to the Special Committee, but also to the Special Committee's outside advisors and TradingScreen's management.[27] Because legal advice could have indirectly reached the Special Committee through these parties, Plaintiffs argue, disclosure is required to enable Plaintiffs to assess

---

[25] Pls.' Reply Br. in Further Supp. of Their Mot. to Compel Disc. from Defs. ("Reply Br.") 9.

[26] *See, e.g.,* Pls.' Opening Br. in Supp. of Their Mot. to Compel Disc. from Defs. ("Opening Br.") 9–10, 16, 19, 35–36; Reply Br. 7 n.5, 9, 16–21.

[27] Reply Br. 10–12.

legal advice the Special Committee actually received and heeded.[28] Plaintiffs argue that *Glenmede Trust Co. v. Thompson*[29] provides persuasive authority in favor of such a holding. Similarly, Plaintiffs request disclosure of any legal advice, regardless of which law firm sent it, in order to test whether the Special Committee received conflicting advice.[30]

The bounds of waiver that Defendants proffer are, predictably, narrower. Defendants argue that their voluntary disclosures waive privilege only for the following specific categories of documents: those containing legal advice on (1) "legal standards for redemption, including the requirements of both surplus and legally available funds;" (2) the Special Committee's fiduciary duties and the applicable standard under *ThoughtWorks*[31]; (3) decision making methods the Special Committee should follow, "including seeking assistance of advisors and information from management;" (4) "the limitations of the rights of preferred

---

[28] *Id*. 14.

[29] 56 F.3d 476 (3d Cir. 1995).

[30] Reply Br. 10. Three law firms advised TradingScreen and the Special Committee: Morris, Nichols, Arsht & Tunnell LLP, Greenberg Traurig, LLP, and Morgan Lewis and Bockins LLP.

[31] *See SV Inv. Partners LLC v. ThoughtWorks, Inc.*, 7 A.3d 973 (Del. Ch. 2010), *aff'd*, 37 A.3d 205 (Del. 2011).

stockholders as stockholders and not creditors;" and (5) "the payment of interest in connection with the redemption."[32]

Defendants also disagree with Plaintiffs' contention that waiver extends to legal advice given to anyone other than the Special Committee members. Citing this Court's holdings in *In re Dairy Mart Convenience Stores, Inc.*[33] and *Pfizer Inc. v. Warner-Lambert, Co.*,[34] Defendants argue that, under Delaware law, waiver by

---

[32] Answering Br. 30.

[33] Two *Dairy Mart* opinions are relevant here: a memorandum opinion and a letter opinion. In the *Dairy Mart* memorandum opinion, the Court held, in a footnote, that because the defendants had waived privilege by asserting an advice of counsel defense, "it would be appropriate, at the plaintiff's discretion, to retake depositions . . . and to seek work papers on those lines of inquiry for which the attorney-client privilege was asserted." *In re Dairy Mart Convenience Stores, Inc.* (*Dairy Mart I*), 1999 WL 350473, at *14 n.47 (Del. Ch. May 24, 1999). This language apparently created disagreement; in a subsequent letter opinion issued roughly two weeks later, the Court resolved what it characterized as "confusion about the scope of waiver of the attorney-client privilege" by defining that scope with an itemized list of waived topics. *See In re Dairy Mart Convenience Stores, Inc.* (*Dairy Mart II*), C.A. No. 14713, at 2–6 (Del. Ch. June 8, 1999). For the sake of convenience, this letter opinion hereinafter cites the *Dairy Mart* memorandum opinion as "*Dairy Mart I*" and the subsequent letter opinion as "*Dairy Mart II*."

[34] Two *Pfizer* opinions are relevant here: a letter opinion and a bench ruling. In the *Pfizer* letter opinion, the Court found that the defendant had not waived the attorney-client privilege because the defendant had not "plan[ned] to use its attorneys' advice to the board" to "demonstrate that its board made informed, decisions." *Pfizer Inc v. Warner-Lambert, Co.* (*Pfizer I*), 1999 WL 33236240, at *1 (Del. Ch. Dec. 8, 1999). The Court cautioned, however, that if the defendant were

committee members "extends only to the documents and other information communicated to those . . . committee members, and not to other documents."[35]

To determine the scope of waiver, this Court must first identify the documents containing privileged advice that defendants have voluntarily disclosed and thereby unsheathed for potential use as a litigation weapon. This task is not as straightforward as it sounds for two reasons. First, although the parties agree that, at the very least, four legal memoranda provide that content,[36] controversy exists over whether an additional set of disclosed documents—mostly emails[37]—covers

---

to submit such evidence, plaintiffs' sword and shield concerns might be "legitimate." *Id.* Three weeks later, the Court heard oral argument on the issue of waiver because, as defense counsel admitted, plaintiff's concerns had become "legitimate"; defendants had, in the interim, "determined to rely upon those conversations and to permit inquiry on to [sic] the communications between our counsel and the board." *Pfizer Inc. v. Warner-Lambert, Co.* (*Pfizer II*), C.A. No. 17524-CC, at 54 (Del. Ch. Dec. 21, 1999) (TRANSCRIPT). The parties' arguments and the Court's bench ruling on this waiver issue are discussed in text *infra* accompanying notes 47–57. For the sake of convenience, this letter opinion hereinafter cites the *Pfizer* letter opinion as "*Pfizer I*" and the subsequent transcript of a bench ruling as "*Pfizer II*."

[35] Answering Br. 28.

[36] *See* Transmittal Aff. of Brendan W. Sullivan in Supp. of Defs.' Answering Br. in Opp'n to Pls.' Mot. to Compel ("Sullivan Aff.") Exs. 2–5; Transmittal Aff. of Christopher H. Lyons, Esq. in Supp. of the TCV Pls.' Opening Br. in Supp. of Their Mot. to Compel Discovery from Defs. ("Lyons Aff.") Exs. 5–7.

[37] *See* Lyons Aff. Ex 15.

the same subject matter as the four memoranda or expands the scope of waiver by discussing new topics.  Second, Plaintiffs urge the Court to consider an additional set of documents that Defendants inadvertently disclosed and later "clawed back" in a fashion that was, according to Plaintiffs, ineffective.  Because the first issue is best addressed alongside the effort to define scope of the waiver, analysis begins with the second.

Plaintiffs argue that certain documents Defendants produced and later "clawed back" should inform scope because the claw-back was improper under Delaware Rule of Evidence 510(c).  That rule, which governs waiver of privilege for inadvertent disclosures, provides:

> A disclosure does not operate as a waiver if:
> (1) the disclosure is inadvertent;
> (2) the holder of the privilege took *reasonable* steps to prevent disclosure; and
> (3) the holder *promptly* took reasonable steps to rectify the error, including following any applicable court procedures to notify the opposing party or to retrieve or request destruction of the information disclosed.[38]

Plaintiffs challenge Defendants' claw-back as neither reasonable nor prompt because it took Defendants twelve days to withdraw three documents flagged by

---

[38] D.R.E. 510(c) (emphasis added).

Plaintiffs as mistakenly produced, and another eight days to identify and claw back fourteen more documents. Accordingly, Plaintiffs argue Defendants' inadvertent disclosure amounts to waiver.[39]

In *Kent County*,[40] this Court found that no waiver had occurred through an inadvertent disclosure where (1) counsel had instituted a process of reviewing documents prior to disclosure, (2) counsel responded to news of the mistake within hours, (3) the mistaken disclosure comprised a small fraction of a vast production, and (4) general fairness considerations dictated that no waiver ought to result.[41] With the possible exception of time taken to rectify the error, the same facts and conclusions appear to obtain here. Plaintiffs' claw back challenge concerns fewer than 20 documents from a production comprising 585 privilege log entries and over 140,000 pages of content, which Defendants' counsel claim to have reviewed.[42] Further, Plaintiffs do not allege any prejudice resulting from either the

---

[39] A confidentiality order negotiated by the parties appears to allow both claw backs and subsequent efforts to compel production of inadvertently produced documents containing privileged information. Stip. and Order Governing the Produc. and Exch. of Confidential and Highly Confidential Info. ¶ 20.

[40] 2008 WL 1851790, at *5.

[41] *Id*.

[42] Answering Br. 7.

delay or the inadvertent disclosure. Accordingly, the Court is satisfied that counsel's remedial steps effected proper withdrawal under D.R.E. 510(c) and, therefore, that the clawed-back documents will not inform the scope of Defendants' waiver.

This brings us, at long last, to defining the scope of Defendants' waiver. As was mentioned above, the parties agree that this scope must at least extend to the subject matter of legal advice rendered in a series of four legal memoranda provided to the Special Committee by the law firms Morris, Nichols, Arsht & Tunnell LLP and Greenberg Traurig LLP.[43] These memoranda, dated between March 5, 2014, and February 19, 2015, cover four categories of legal advice for which Defendants have waived privilege:

Category 1: Legal advice on how, based on applicable law and TradingScreen's charter, the Special Committee should approach the task of determining funds available for redemption. This category includes plain-text summaries of relevant charter provisions, descriptions of the contractual, statutory, and common law standards that operate to constrain the Special Committee's

---

[43] *See* Sullivan Aff. Exs. 2–5.

options and decision making process (for example, fiduciary duties, how to calculate—and the significance of calculating—surplus and funds legally available, and hiring and using outside advisors), the practical implications of those constraints, and steps the Special Committee should take, based on those constraints, to calculate the redemption payment. It does not, by contrast, include any actual calculations, discussion on the formation, powers, or compensation of the Special Committee, or advice on the process, provided for in the charter, by which stockholders may seek TradingScreen's assistance to sell their preferred stock or retain an independent financial advisor to determine fair market value.

Category 2: Legal advice on how, based on applicable law and TradingScreen's charter, the Special Committee should proceed after determining funds available for redemption, including what the company's options are in light of those constraints. This category includes advice on performing periodic re-evaluations, considerations relevant to determining whether and how to finance the redemption, needs that might justify retaining cash for purposes other than redemption under the law, what to do in the event TradingScreen has insufficient

funds, and information and reports the Special Committee should seek from management and outside advisors.

Category 3: Predictions, based on applicable law and TradingScreen's charter, on whether the preferred stockholders will have the status of equity holders or creditors in the context of this redemption.

Category 4: Predictions, based on applicable law and TradingScreen's charter, on whether the charter's 13% interest payment provision will be triggered through the course of this redemption.

None of the additional communications which the Plaintiffs claim expand the scope of waiver departs from these four categories. Although each communication that Plaintiffs point to *can* be linked to a conceptually distinct subject matter, allowing scope to expand through that practice would result in a slippery-slope dynamic that is unfair and therefore contrary to the logic regarding waiver of the attorney-client privilege. Consider, for example, a voluntarily-disclosed email chain in which Defendants' counsel offered, at one point, a one-sentence summary of an edit to a set of draft resolutions:

> I made one change to put back in the concept of determining surplus and legally available funds, which is a key consideration for the special committee.[44]

Defendants construe this text as falling within the waived subject matter of legal constraints on the Special Committee's decision making process. Plaintiffs, by contrast, argue that it falls within a subject matter they characterize as "the formation and power of the Special Committee"[45] and ask that all communications on this new subject matter be disclosed. The Court declines this and all similar invitations.[46]

Finally, the Court must decide whether legal advice on Categories 1–4 that was provided to individuals other than those on the Special Committee (or "beyond-the-board advice") falls within the scope of Defendants' waiver. One

---

[44] Lyons Aff. Ex. 16. The draft resolutions the writer references are attached to the email chain.

[45] Opening Br. 16 & n.8.

[46] Plaintiffs claim that Defendants have voluntarily disclosed a total of 44 documents that contain legal advice and argue each should inform the scope of waiver. Lyons Aff. Ex. 15. Instead of providing each document as an exhibit, Plaintiffs provided a smaller set of these documents to the Court—presumably those that, in their view, most clearly expand scope—and described the rest in an itemized "waiver log." *Id.* It is apparent from those the Court can review, as well as the descriptions contained in Plaintiffs' waiver log, that none expands the scope of Defendants' waiver.

case the Defendants cite, *Pfizer II*, squarely addresses this issue. What's more, in *Pfizer II*, the Court issued a bench ruling in which—just as in this case—Plaintiffs' counsel relied principally on *Glenmede* and Defendants' counsel relied principally on *Dairy Mart II*.[47] The *Pfizer II* Court held that beyond-the-board advice fell outside the scope of defendants' waiver.[48] There is no reason to depart from that holding here.

In *Pfizer II*, defendants Warner-Lambert Co. ("Warner") and Warner's individual board members voluntarily disclosed attorney-client communications in order to show the directors were adequately informed[49] when they made certain business judgments.[50] Plaintiff Pfizer, Inc. ("Pfizer") subsequently sought discovery of legal advice defense counsel "gave to the employees and officers of Warner on the same subjects" discussed in counsel's communications to the board.[51] Citing (and directly quoting) *Glenmede*, Pfizer argued that extending Warner's waiver to beyond-the-board advice would prevent sword-and-shield

---

[47] *Pfizer II*, C.A. No. 17524-CC, at 56–58, 64–66.

[48] *Id.* at 88–90.

[49] *See id.* at 54.

[50] *Pfizer I*, 1999 WL 33236240, at *1.

[51] *Pfizer II*, C.A. No. 17524-CC, at 55.

gamesmanship by enabling Pfizer properly to "test [the] advice" Warner's board received and presumably relied upon.[52] In *Glenmede*, the United States Court of Appeals for the Third Circuit upheld a holding that a party's decision to assert an affirmative reliance on counsel defense effected waiver of privilege as to "all communications, whether written or oral, to or from counsel," as well as "back-up documents" and "internal research."[53] Thus, theoretically, documents the client in *Glenmede* never received were nonetheless discoverable. The Third Circuit's position made "imminent sense," argued Pfizer, because it mitigated the risks associated with entrusting a waiving party to decide which documents fall within the scope of its waiver.[54]

Warner responded by citing *Dairy Mart II*, a case in which this Court, in the context of a reliance on counsel defense, defined the scope of the withholding party's waiver as including "all documents that were obtained, digested, or created and *then in any way communicated to the outside directors* by [counsel] (or by any

---

[52] *Id.* at 64–66.

[53] *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 480, 486–487 (3d Cir. 1995).

[54] *Pfizer II*, C.A. No. 17524-CC, at 65–66.

lawyer with his firm . . . )."[55] Warner buttressed its legal authority with a policy argument, cautioning the Court against creating a waiver rule that would ultimately chill non-director-employees' willingness to seek legal advice.[56] The Court held in Warner's favor, ordering discovery only of advice presented to the Warner board—and no other constituency.[57]

*Dairy Mart II* and *Pfizer II* ought to control here for two reasons. First, *Glenmede* is neither binding nor directly on point. The *Glenmede* court addressed the disclosure of attorney work notes, a class of documents that not only presents different fairness and policy considerations than beyond-the-board advice, but that Delaware courts have repeatedly found beyond the scope of waiver.[58] Second, the result in *Dairy Mart II* and *Pfizer II* harmonizes with fairness concerns present in this case. Unearthing the whole truth of the TradingScreen Special Committee's reliance on counsel defense requires full disclosure of legal advice its members actually received. Disclosing advice they never received moves no soil. Nor does disclosing legal advice given to non-director individuals (namely, financial

---

[55] *Dairy Mart II*, C.A. No. 14713, at 2 (emphasis in original).
[56] *Pfizer II*, C.A. No. 17524-CC, at 57–58.
[57] *Id*. at 89.
[58] *See, e.g.*, sources cited *supra* note 21.

advisors and corporate officers) who repackaged that legal advice and subsequently transmitted it to the Special Committee—unless the Special Committee recognized it as legal advice.

Accordingly, legal advice concerning Categories 1–4 shall only be deemed waived if the advice was presented to the individual members of the Special Committee in any capacity and regardless of which law firm sent it. To be clear, this means that if Mr. Buhannic received a particular bit of legal advice in his capacity as CEO, not as a Special Committee member, documents reflecting that advice will nonetheless be disclosed. Further, if the Special Committee received advice from outside advisors or officers that obviously reflects legal advice concerning a waived Category, that will be disclosed.

Defendants shall produce within the scope defined above within fifteen business days.

B. *What must Defendants do to assert privilege for the unlogged redactions?*

    1. Applicable Legal Standards

As a general matter, the burden of proving privilege rests on the asserting party.[59] Although Delaware case law clearly establishes the requirements for drafting an adequate privilege log (the primary mechanism by which attorneys claim privilege for wholly-withheld documents), the standards applicable to redaction logs are less well-defined.

Legal standards governing the adequacy of privilege logs are as follows. In the event a party withholds a document on the basis of privilege, he "must provide sufficient facts as to bring the identified and described document within the narrow confines of the privilege,"[60] which typically involves producing a privilege log detailing:

> (a) the date of the communication, (b) the parties to the communication (including their names and corporate positions, (c) the names of the attorneys who were parties to the communication, and (d) [a description of] the subject of the communication sufficient to show why the privilege applies, as well as [the issue to which] it pertains . . . . With regard to this last requirement, the privilege log

---

[59] *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992).

[60] *Mechel Bluestone, Inc. v. James C. Justice Cos., Inc.*, 2014 WL 7011195, at \*4 (Del. Ch. Dec. 12, 2014).

must show sufficient facts as to bring the identified and described document within the narrow confines of the privilege.[61]

Because "an improperly asserted claim of privilege is no claim of privilege at all,"[62] a party that fails to adequately describe withheld documents might waive privilege for those documents.[63] Court-ordered waiver, however, has been characterized as a "harsh result" typically only justified "in cases of the most egregious conduct by the party claiming the privilege."[64] Where the log's inadequacy does not cause prejudice or reflect bad faith, the court has discretion to fashion "more remedial sanctions."[65]

---

[61] *Id.* (quoting *Unisuper Ltd. v. News Corp.*, C.A. No. 1699–N, slip op. at 2 (Del. Ch. Mar. 9, 2006)) (alterations in original).

[62] *Id.* at *5 (quoting *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974)).

[63] *Id.*

[64] *Wolhar v. General Motors Corp.*, 712 A.2d 457 (Del. Super. 1997); *see also Mechel*, 2014 WL 7011195, at *6 ("If a party falls substantially short of the well-established requirements, then waiver is an appropriate consequence that helps dissuade parties from engaging in dilatory tactics.").

[65] *See Mechel*, 2014 WL 7011195, at *6 ("Whether to deem the privilege waived or allow the party to provide a supplemental log is a matter for case-by-case adjudication."); *Wolhar*, 712 A.2d at 463 ("Less egregious conduct—where it appears that there is a genuine claim of work product privilege in which there has been discovery abuse but with no final prejudice to the party seeking waiver—is typically resolved through more remedial sanctions.").

2. Discussion

Ordinarily, a party asserting privilege must produce both a privilege log and a redaction log absent mutual agreement that a less burdensome arrangement will suffice.[66] The Plaintiffs in this matter present a fair alternative to preparing a redaction log: ordering senior Delaware counsel for the Defendants to review each redaction and certify that no redaction runs afoul of the scope of waiver set forth in this letter opinion.

This meet-in-the-middle solution makes sense under these circumstances. There is no evidence of bad faith or deliberate obfuscation. Emails among counsel reveal that Defendants' omission stems in part from a good faith dispute over the value of logging each redaction given the presence of context cues in unredacted portions of each document.[67] Through the course of this discovery dispute, Defendants allege they have reviewed certain challenged documents,[68] have

---

[66] *See, e.g.*, *Mechel*, 2014 WL 7011195, at *10 (ordering production of a combined redaction and privilege log to enable subsequent challenges to assertions of privilege).

[67] *See* Lyons Aff. Ex. 12.

[68] *E.g.* Answering Br. 38–43.

produced certain documents,[69] and have offered to work with Plaintiffs to some degree on the redaction issue.[70]  Accordingly, Defendants' efforts do not raise the sort of concerns apparent in cases like *Mechel Bluestone, Inc. v. James C. Justice Cos.* and *Klig v. Deloitte LLP*, where relatively severe sanctions befell parties whose conduct involved "extreme behavior" that "intentionally produced chaff"[71] and amending a "strikingly bad" log in ways that "did more to obfuscate than clarify."[72]  Further, the task of logging each redaction may prove a laborious addition to an already-vast discovery effort,[73] a fact of some significance given this Court's efficiency ideals[74] and the presence of a less burdensome alternative proposed by the aggrieved party.

In view of the foregoing, at this stage of the proceedings, a modified version of Plaintiffs' proposed remedy is appropriate: Senior Delaware counsel for

---

[69] *E.g. id.*

[70] *See* Lyons Aff. Ex. 12.

[71] *Klig v. Deloitte LLP*, 2010 WL 3489735, at *6 (Del. Ch. Sept. 7, 2010).

[72] *Mechel*, 2014 WL 7011195, at *6–7.

[73] According to Defendants, discovery in this case entailed the production of about 140,000 pages of content and, as referenced above, some 1,900 redacted documents. Answering Br. 7.

[74] *See, e.g.*, Ct. Ch. R. 1 ("These Rules shall . . . be construed and administered to secure the just, speedy and inexpensive determination of every proceeding.").

TradingScreen shall re-review the redactions that appear on documents that post-date March 14, 2013 (the date on which Plaintiffs delivered demand for redemption),[75] and certify that those redactions are consistent with the scope set forth in this letter opinion within fifteen business days.  The record indicates that TradingScreen sought legal advice on the redemption—advice that could be relevant to Defendants' reliance on counsel defense—shortly after receiving notice of this demand.[76]

To comply with the above guidance, Defendants will need to review withheld documents and redactions to ensure undisclosed content does not fall within the scope of waiver set forth in this letter opinion.  To provide an example of how the Court would expect Defendants to conduct that review, the Court turns to a chart supplied in Defendants' papers that purports to group the 585 documents listed on Defendants' privilege log into 59 "privilege categories"[77] that the Defendants understand as properly outside the bounds of waiver.

---

[75] *TradingScreen Inc.*, 2015 WL 1598045, at *2.
[76] *See* Lyons Aff. Ex. 18.
[77] Sullivan Aff. Ex. 25.

Some of the items on Defendants' list concern outside advisors: for example, "Engaging a compensation advisor," "AlixPartners' engagement terms and negotiations," and "Draft document requests to AlixPartners."[78]   However, Category 1 or Category 2 advice on outside advisors only encompasses legal advice given to the Special Committee on whether to retain and how to use outside advisors to remain within the bounds of Delaware law and TradingScreen's charter in the context of the redemption.   Nowhere do the memoranda—and thus neither do the Categories—include advice on specific advisors to select or provide particular engagement terms to negotiate.   Accordingly, documents in those three items on Defendants' list are only discoverable to the extent that they (1) contain advice on the broader legal guidelines and recommendations described in Categories 1 and 2 and (2) were provided to at least one member of the Special Committee.   Defendants may redact portions of newly-disclosed documents that fall outside the scope of waiver.

---

[78] *Id.*

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel is granted in part

and denied in part.  The parties shall proceed as directed in this letter opinion.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ **John W. Noble***

JWN/cap
cc:    Eric D. Selden, Esquire
Kevin G. Abrams, Esquire
Register in Chancery-K